# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                      |     |                       |
| -------------------- | --- | --------------------- |
| **STATE OF DELAWARE** | )   |                       |
|                      | )   |                       |
| **v.**               | )   |                       |
|                      | )   | **ID No. 2007003250** |
| **CAPICE JOHNSON,**  | )   |                       |
| **Defendant.**       | )   |                       |

Submitted: February 20, 2023
Decided: February 27, 2023

## <u>ORDER</u>

*Upon Defendant's Motion in Limine –* **DENIED.**

This 27th day of February, 2023, having considered Defendant's Motion *in limine* seeking a *Lolly/Deberry* instruction, the State's Response, oral arguments of counsel and the record in this matter; it appears to the Court that:

1.     Defendant Capice Johnson (hereinafter "Defendant") was indicted on September 21, 2020, and charged with one count of Possession of a Firearm by a Person Prohibited in violation of Title 11, Section 1448 of the Delaware Code, one count of Driving Under the Influence of a Drug in violation of Title 21, Section 4177 of the Delaware Code, one count of Possession of Marijuana in violation of Title 16, Section 4764(d) of the Delaware Code and one count of No Proof of Insurance, in

violation of Title 21, Section 2118(p) of the Delaware code, following a collision which occurred on July 7, 2020.[1]

2.     Defendant filed this Motion *in Limine* on January 17, 2023.[2]  The State filed its response on January 31, 2023,[3] and the motion was heard on February 17, 2023.[4]  During oral argument on the motion, technological difficulties prevented the relevant surveillance video from playing in the courtroom.   After the hearing, the State provided the Court with a copy of the surveillance for review prior to a decision on the motion.  This was received on February 18, 2023, and reviewed in chambers with consent of the parties.[5]

3.     The Court will briefly recount here the relevant evidence presented with respect to this motion.  Defendant was the sole occupant of a 2013 white Kia Optima, a passenger sedan, which crashed into a concrete barrier approaching the Biddles Toll Plaza on Delaware State Route 1 on July 7, 2020.  The surveillance reveals that upon the crash occurring, various toll booth workers immediately attend to the driver

---

[1]     *See* Indictment, *State v. Capice Johnson*, ID No. 2007003250 (Del. Super. Ct. Sept. 21, 2020) (D.I. 1).

[2]     D.I. 21.

[3]     D.I. 22

[4]     D.I. 23.

[5]     It was agreed at the hearing that the surveillance will be marked as State's Exhibit 1 upon receipt by the Court.  Upon receipt, the surveillance was so marked.

and sole occupant of the crashed vehicle, who was ultimately revealed to be Defendant. The vehicle was registered to a Kimberly Moreland, not Defendant.

4.      Upon hearing the crash, one toll booth worker, who was inside of the Administration Building adjacent to the toll plaza, ran out of the building and observed Defendant in the driver's seat.[6]  As stated above, the surveillance video reveals that this witness was not the only witness who approached the Kia following the crash, but multiple apparent toll booth employees went over to the car.  The other employees, however, have not been identified by the State or interviewed in relation to this case.  Therefore, the sole identified witness reported to the Delaware State Police investigating Troopers that, "she observed the Defendant bend over inside the car before reaching for something under the driver seat…[and]…after Defendant reached under the seat, he had a black sweatshirt in hand, he exited the vehicle, opened the trunk, and placed the sweatshirt inside of the trunk toward the right passenger side."[7]

7.      Likewise, the surveillance video shows Defendant exit his vehicle with a dark object in his hand, proceed to the trunk and place the dark object in the trunk before returning to the driver's seat.

---

[6]      State's Reply to Mtn., p. 2.

[7]      *Id.*

8. Investigating Troopers initiated a Driving Under the Influence investigation and it wasn't until the Kia was eventually towed and impounded did an inventory search reveal a loaded 9mm handgun wrapped in a black sweatshirt, in the trunk.[8] The handgun was collected and tested for DNA, with no results of evidentiary value. The black sweatshirt was not collected and left in the trunk of the vehicle, which was ultimately returned to the registered owner, with a tow slip being provided to Defendant upon completion.

9. Defendant now moves *in limine* for a missing evidence instruction pursuant to *Lolly v. State*[9] and *Deberry v. State*.[10] Defendant argues the Delaware State Police had a duty to preserve this black sweatshirt, were negligent in not doing so, and this negligence warrants a missing evidence instruction at trial. The State opposes, arguing no such duty exists in this factual scenario.

10. A *Lolly/Deberry* analysis requires the Court to first determine whether the unpreserved evidence, if in possession of the State, would have been subject to disclosure under Superior Court Criminal Rule 16 or under *Brady v. Maryland*.[11] The second step in a *Lolly/Deberry* analysis requires the Court to determine whether the State had a duty to preserve the non-collected evidence.[12] If the State had a duty

---

[8] *Id.* 2-3.
[9] 611 A.2d 956 (Del. 1992).
[10] 457 A.2d 744 (Del. 1983).
[11] *Johnson*, 27 A.3d at 546, citing *Brady v. Maryland*, 373 U.S. 83 (1963).
[12] *Id.*

to collect the missing evidence, the Court must next determine the appropriate consequence that flows from the breach of that duty. In making that determination, the Court must examine the degree of negligence or bad faith involved, the importance of the missing evidence (i.e. the probative value and the reliability of secondary or substitution evidence available) and the sufficiency of the other evidence produced/to be produced.[13]

11. In support of his motion, Defendant cites to *Johnson v. State*.[14] The Delaware Supreme Court in *Johnson* found a missing evidence instruction was required due to the police's failure to collect a sweatshirt that was used to conceal a firearm in the backseat of a car, in which defendant Johnson was a passenger. While at first glance, *Johnson* appears similar, a closer look at the facts of *Johnson* reveal important distinguishing factors. Johnson was a passenger in a car driven by his one-time co-defendant, Reeves. Upon being pulled over, Reeves and Johnson were both asked to step out of the Reeves vehicle and were questioned by police after a firearm, wrapped in clothing, was located in the backseat. Johnson fled during this questioning and ran towards a trailer in which he had been staying. When the police approached this trailer, the owner showed them to Johnson's room, and stated that Reeves also stayed with Johnson in that room on occasion. In this room, the police

---

[13]   *Id.* 546-547, citing *Deberry v. State*, 547 A.2d at 749 and *Lolly v. State*, 611 A.2d at 960.

[14]   27 A.3d 541 (Del. 2011).

located another firearm, which was also wrapped in clothing: a pair of sweatpants. Initially, both Reeves and Johnson were charged, however, the State dropped the charges against Reeves and proceeded to trial solely against Johnson for the firearm offenses.

12. In ruling that a *Lolly/Deberry* instruction should have been given, the Court reasoned that because the police were investigating two separate weapon possession offenses, "the police had a duty to gather and to preserve the clothing from the car, and the sweatpants from the bedroom, that concealed *each* of the weapons that were the basis for the criminal charges against Johnson."[15] The Court explained that a possession offense may certainly be proved by circumstantial evidence and concluded that had these clothes been collected, they would have been discoverable under Superior Court Criminal Rule 16.

13. The Court continued its analysis and found that there was not sufficient secondary evidence of ownership to support not collecting the clothing. Johnson argued that that the clothes in which the weapons were concealed did not belong to him, and thus were important to his defense that the weapons did not belong to him. The Court agreed.[16] Therefore, the Court turned to the final step and concluded that

---

[15] *Id.* at 547 (emphasis added).
[16] *Id.* at 548.

the proper consequence which should have flowed from this breach was that a missing evidence instruction was warranted.[17]

14. Here, had the evidence been collected, it would have undoubtedly been discoverable under Rule 16. However, that does not necessarily mean that the State had a duty to collect this sweatshirt here. In contrast to the facts before the *Johnson* court, Defendant was the sole operator of a vehicle, albeit not the owner, who is charged with a single count of possession of a firearm. There is no other linked investigation here, which diminishes the importance of the non-collected sweatshirt, if any. Therefore, under these circumstances, there was no duty to collect this sweatshirt, as the owner of the sweatshirt was irrelevant to this situation.

15. Defendant argues that the sweatshirt could have been tested for DNA, as he was injured in the crash and could have bled onto the sweatshirt. At this point in time, the record is devoid of evidence that there was any blood on Defendant's hand and any arguments related to DNA is speculation.[18]

16. Even assuming *arguendo* that the State have had a duty to collect this sweatshirt, Defendant would not be entitled to a missing evidence instruction. Defendant appropriately concedes that there was no bad faith in failing to collect the sweatshirt. Therefore, the analysis into the consequence of the assumed breach of

---

[17] *Id.*

[18] *See Blenman v. State*, 134 A.3d 760 (Del. 2016) (Table); 2016 WL 889551 at *3.

duty continues under a finding that the Officer was negligent for not collecting the sweatshirt. In evaluating the degree of negligence involved, the record as it exists does not support this factor weighing heavily against the State. In conducting an inventory search of the Kia following a DUI investigation, the Trooper unexpectedly located a firearm wrapped in a black sweatshirt in the trunk. It was not negligence to not collect the sweatshirt given the fact that Defendant was the sole operator of the vehicle and there was a witness, corroborated by surveillance, who stated Defendant was seen carrying a black sweatshirt to the trunk. While it would have been best practices to collect the sweatshirt, it was not negligent to fail to do so.

17. Turning to the remaining analysis necessary in determining the consequences of this supposed breach of duty to collect, the non-collected sweatshirt is of minimal probative value in this factual scenario. The State asserts it will present the toll employee-witness who saw Defendant reach down in the front passenger seat of the Kia, pick up a black sweatshirt, exit the Kia, carry the sweatshirt to the trunk, open the trunk, place the sweatshirt in the trunk, close the trunk and then return to the driver's seat of the Kia prior to the police arriving on scene. Additionally, surveillance video supports this witness statement. While the surveillance video does not clearly show what is in Defendant's hands when he exits the vehicle to walk to the trunk, it is clear there is a dark object in his hands and he places that object in the trunk prior to returning to the driver's seat of the Kia. Therefore, not only does

the State have a witness, but that witness' testimony is corroborated by the video. Therefore, the reliability of the secondary evidence is strong, as is the sufficiency of any other evidence to be produced/presented to the jury.

18.    Defendant remains free to argue to the jury any reasonable inferences from the facts regarding the sweatshirt or the investigation, but that the facts as the record stands at this point do not entitle him to a missing evidence instruction pursuant to *Lolly/Deberry*.[19]

**IT IS HEREBY ORDERED,** that Defendant's Motion *in Limine* for a *Lolly/Deberry* Instruction is **DENIED**.



Danielle J. Brennan, Judge


Original to Prothonotary

Cc:    William L. Raisis, Esquire, Deputy Attorney General
       Sean A. Motoyoshi, Esquire, Office of Defense Services

---

[19]    Defendant is correct, as he submitted in oral argument, that he has no burden to produce evidence to support his claim, there must be record evidence to support any ruling on this issue above and beyond speculation. The record, as it currently exists pre-trial, does not support a ruling in favor of Defendant's motion.